**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF PUERTO RICO**

STUART A. WEINSTEIN-BACAL,

     Plaintiff,

         v.                    CIV. NO. 10-1750 (PG)

FREDERICK WENDT-HUGHES, ET ALS.,

     Defendants.

<u>OPINION AND ORDER</u>

     Before the Court are co-defendants Frederick Wendt-Hughes, Alice Wendt, Conjugal Partnership Wendt-Wendt and TSH Corporation's motion to dismiss (Docket No. 12) wherein they request the dismissal of the present action on the grounds that the plaintiff's domicile, as well as defendants', is in Puerto Rico, and thus, the plaintiff cannot assert the jurisdiction of this Court. In their motion, the appearing co-defendants also argue this action is time-barred. Plaintiff timely opposed said request. See Docket No. 17. After considering the pleadings, the documentary evidence attached to the parties' motions, and the applicable law, the Court hereby **DENIES** the motion to dismiss (Docket No. 12).

**I. BACKGROUND**

     On August 3, 2010, attorney Stuart A. Weinstein-Bacal ("Weinstein" or "Plaintiff") filed the instant claim for damages against defendants Frederick Wendt-Hughes ("Wendt"), his wife Alice Wendt ("Mrs. Wendt"), the Conjugal Partnership Wendt-Wendt, La Julia Development ("La Julia"), TSH Corporation ("TSH"), and other unknown defendants invoking this Court's subject matter jurisdiction pursuant to 28 U.S.C. § 1332. See Docket No. 1. Essentially, Plaintiff alleges that the events that bring about the present claim stem from Wendt's Chapter 11 bankruptcy proceedings, wherein attorney Weinstein represented the Wendts and a closely-held corporation by the name of Word Processing Center, Inc. ("WPC"). In said proceedings, the bankruptcy court approved a plan of reorganization that included the payment of $72,790.83 in attorney fees to be made upon the sale of a real-estate property in the Las Olas Condominium in Condado, Puerto Rico. Subsequent to the discharge of the debtors in bankruptcy court, and without notice, Plaintiff alleges that the Wendts sold the Las Olas property and did not pay the attorney fees owed to

Plaintiff. As a result, Weinstein sued the Wendts and WPC before the local courts and in 2001, obtained a judgment in his favor for $72,790.83 plus interest. Plaintiff claims, however, that in order to avoid paying the fees owed, Mr. Wendt filed for personal bankruptcy on at least three (3) occasions after the local court judgment. Following the dismissal of these cases, on May 2, 2006, the local court issued an embargo order seizing all of the Wendts' shares of WPC. This order was notified to the parties on May 8, 2006. The Plaintiff alleges that at the time of the embargo order, WPC's only asset was a property on the first floor of a building located at 103 University Avenue in Rio Piedras, Puerto Rico ("University Avenue Property"). In accordance with the embargo order, the Plaintiff recorded a preventive entry with the Property Registrar in the amount of the attorney fees owed, and Mr. Wendt's shares of WPC were seized. Thereafter, on September 10, 2006, a lawfully conducted auction took place and the shares of WPC stock were adjudicated to Plaintiff.

However, on May 24, 2006, Mr. Wendt, appearing as president of WPC, sold the University Avenue Property to a company by the name of La Julia, represented by Juan Piza, in a deed of sale prepared by attorney and notary public Rafael J. Baragaño, who is now deceased. Although attorney Baragaño allegedly warned the parties in the deed that the property in question was subject to a lien in favor of Weinstein, both Piza and Wendt represented that the debt had been satisfied prior to the execution of the deed. However, the Plaintiff now claims this information was false. In addition, the Plaintiff now complains that he was never provided a notice of the intended sale of the property and alleges the transaction was made with the purpose to defraud him inasmuch as Wendt and La Julia are alter egos.

Weinstein now requests that this Court order the sale of the University Avenue Property to La Julia null and void *ab initio* and order the Property Registrar of the Commonwealth of Puerto Rico to cancel the registration of the transfer; order defendant Mr. Wendt, his alter egos and/or La Julia to cease and desist from interfering with the use and enjoyment of the property in question; order Wendt to pay Plaintiff the sum of $400,000 for the rent received as a result of the fraudulent sale; order defendants to pay Plaintiff the sum of $500,000 in damages. See Docket No. 1.

The Wendts and TSH filed a motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure claiming Plaintiff has failed to assert that diversity jurisdiction exists. As a result, the moving defendants sustain that this Court lacks subject matter jurisdiction. In addition,

defendants move to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure arguing that the Plaintiff's claims are time-barred inasmuch as the sale of the University Avenue property took place over four (4) years ago, and thus, the one-year statute of limitations has elapsed.[1] See Docket No. 12. Plaintiff opposed the defendants' contentions and purports that he is domiciled in the state of Virginia, and that diversity thus exists. Weinstein also responds that none of the remedies requested is time-barred. See Docket No. 17.

## II. STANDARD OF REVIEW

"The general rules of pleading require a short and plain statement of the claim showing that the pleader is entitled to relief. … This short and plain statement need only give the defendant fair notice of what the … claim is and the grounds upon which it rests." Gargano v. Liberty Intern. Underwriters, Inc., 572 F.3d 45, 48 (1st Cir.2009) (internal citations and quotation marks omitted).

Motions to dismiss brought under Fed.R.Civ.P. 12(b)(1) and 12(b)(6) are subject to the same standard of review. See Negron-Gaztambide v. Hernandez-Torres, 35 F.3d 25, 27 (1st Cir.1994). When ruling on such motions, a district court "must accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, limns facts sufficient to justify recovery on any cognizable theory." Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir.2009) (citing LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 508 (1st Cir.1998)). Courts "may augment the facts in the complaint by reference to (i) documents annexed to the complaint or fairly incorporated into it, and (ii) matters susceptible to judicial notice." Gagliardi v. Sullivan, 513 F.3d 301, 306 (1st Cir.2008) (internal citations and quotation marks omitted). "Yet [the court] need not accept as true legal conclusions from the complaint or naked assertions devoid of further factual enhancement." Maldonado v. Fontanes, 568 F.3d 263, 266 (1st Cir.2009) (citing Ashcroft v. Iqbal, 129 S.Ct. 1937, 1960 (2009)). Although a complaint attacked by a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "does not need detailed factual allegations, … , a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

---

[1] The appearing co-defendant also made an indispensable party argument, which, in light of the recently-filed amended complaint (Docket No. 28), is now moot.

elements of a cause of action will not do … ." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted).

Moreover, "even under the liberal pleading standard of Federal Rule of Civil Procedure 8, the Supreme Court has … held that to survive a motion to dismiss, a complaint must allege a plausible entitlement to relief." <u>Rodriguez-Ortiz v. Margo Caribe, Inc.</u>, 490 F.3d 92, 95 (1st Cir.2007) (<u>citing</u> <u>Twombly</u>, 550 U.S. 544 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 129 S.Ct. at 1949 (<u>citing</u> <u>Twombly</u>, 550 U.S. at 556). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, … , on the assumption that all the allegations in the complaint are true (even if doubtful in fact)…." <u>Twombly</u>, 550 U.S. at 555 (internal citations and quotation marks omitted). "Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Iqbal</u>, 129 S.Ct. at 1950.

### III. DISCUSSION
#### A. Diversity Jurisdiction

Federal courts are courts of limited jurisdiction. "Federal courts have jurisdiction over controversies arising between 'citizens of different states,' provided that the amount in controversy exceeds $75,000." Garcia Perez v. Santaella, 364 F.3d 348, 350 (1st Cir.2004); see also 28 U.S.C. § 1332(a)(1). This Court has the responsibility "to police the border of federal jurisdiction." Spielman v. Genzyme Corp., 251 F.3d 1 (1st Cir.2001). The courts must "rigorously enforce the jurisdictional limits that Congress chooses to set in diversity cases." del Rosario Ortega v. Star Kist Foods, 213 F.Supp.2d 84, 88 (D.P.R. 2002) (citing Coventry Sewage Associates v. Dworkin Realty Co., 71 F.3d 1, 3 (1st Cir.1995)).

A party that seeks the jurisdiction of the federal courts has the burden of demonstrating its existence. See Murphy v. United States, 45 F.3d 520, 522 (1st Cir.1995). Here, Plaintiff invoked the Court's jurisdiction pursuant to the diversity statute, 28 U.S.C. § 1332. Diversity jurisdiction requires complete diversity between all plaintiffs and all defendants. See Casas Office Machines v. Mita Copystar America, Inc., 42 F.3d 668, 673 (1st Cir.1994). Since co-defendants challenged Plaintiff's jurisdictional allegations, Plaintiff bears the burden of proving, by a preponderance of the evidence, the

facts supporting jurisdiction. See Thomson v. Gaskill, 315 U.S. 442 (1942); Bank One v. Montle, 964 F.2d 48, 50 (1st Cir.1992); Rivera v. Hosp. Interamericano de Medicina Avanzada, 125 F.Supp.2d 11, 17 (D.P.R. 2000).

Because federal jurisdiction based on diversity requires that the matter in controversy be between citizens of different states, "[f]or purposes of diversity, a person is a citizen of the state in which he is domiciled." Padilla-Mangual v. Pavia Hosp., 516 F.3d 29, 31 (1st Cir.2008) (internal citations omitted). A person's domicile is "the place where he has a true, fixed home and principal establishment, and to which, whenever he is absent he has the intention of returning." Rodriguez-Diaz v. Sierra-Martinez, 853 F.2d 1027, 1029 (1st Cir.1988)(internal citations omitted). Domicile generally requires two elements: (1) physical presence in a state, and (2) the intent to remain there indefinitely. See Valentin v. Hospital Bella Vista, 254 F.3d 358, 366 (1st Cir.2001). There must be an intention to remain at the new residence indefinitely; it is not required that the intention be to stay there permanently. A 'floating intention' to return to a former domicile does not prevent the acquisition of a new domicile. See Hawes v. Club Ecuestre El Comandante, 598 F.2d 698, 701 (1st Cir.1979) (internal citations omitted). Nevertheless, a party can only have one domicile at a time, see Hospital Bella Vista, 254 F.3d at 367, and a change of one's legal domicile can occur instantly, see Morris v. Gilmer, 129 U.S. 315, 328 (1889).

> To acquire a domicile of choice in a place, a person must intend to make that place his home for the time at least … There is no minimum period of residency required. A citizen of the United States can instantly transfer his citizenship from one state to another … A person may have only one domicile at a time, and until a new one is acquired, the established one continues, … , and, once acquired, the presumption is that it continues until changed. … It has long been the rule that motive for the change in residence is irrelevant in determining domicile.

Club Ecuestre El Comandante, 598 F.2d at 701 (internal citations omitted).

For federal jurisdictional purposes, diversity of citizenship must be established as of the time of the filing of the suit. Hospital Bella Vista, 254 F.3d at 361; Hosp. Inter. de Medicina Avanzada, 125 F.Supp.2d at 16. Accordingly, the critical date here is August 3, 2010, the date of the filing of the complaint.

In determining a plaintiff's domicile, the Court must focus on that party's intent and must consider the totality of the evidence. The place of residence is prima facie evidence of a parties' domicile. See Macone v.

<u>Nelson</u>, 274 F.Supp.2d 136, 140 (D.P.R. 2003). Courts "take into account a variety of factors indicating the extent of a particular party's ties to the purported domicile … [including] current residence; voting registration and voting practices; location of personal and real property; location of brokerage and bank accounts; membership in unions, fraternal organizations, churches, clubs and other associations; place of employment or business; driver's license and other automobile registration; [and] payment of taxes…," <u>Garcia Perez</u>, 364 F.3d at 351 (<u>citing</u> 13B WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE § 3612 (2d ed. 1984)). "However, the First Circuit considers registration to vote a "weighty" factor in ascertaining domicile." <u>Rivera v. Hosp. Interamericano de Medicina Avanzada</u>, 125 F.Supp.2d at 18.

      "When ruling upon a motion to dismiss for lack of diversity, a Court is entitled to consider testimony and evidence presented in an evidentiary hearing as well as the paper record previously created by the litigants." <u>Casiano Communications, Inc. v. Velazquez Pinol</u>, 738 F.Supp.2d 301, 304 (D.P.R. 2010) (<u>citing</u> <u>Padilla-Mangual</u>, 516 F.3d at 34). "The existence of diversity is a mixed question of law and fact and the Court must necessarily perform findings regarding credibility, particularly where they relate to the allegedly non-diverse party's expressed intent regarding domicile." <u>Velazquez Pinol</u>, 738 F.Supp.2d at 304 (<u>citing</u> <u>Bank One, Texas, N.A. v. Montle</u>, 964 F.2d 48, 52 (1st Cir.1992)).

      The Plaintiff in the instant case filed a declaration under penalty of perjury whereby he affirms that he lived in Puerto Rico from 1986 until 2001, but that since 2001, he owns a home, resides and is domiciled in Middleburg, Virginia, where he lives with his family and has the intention of remaining. Weinstein also states therein that he only votes in the state of Virginia; that he owns four (4) cars, all of which were purchased in Virginia and are currently located there; the he possesses a Virginia driver's license; that he is admitted to both the District of Columbia and Virginia bar; that his personal bank accounts were opened in Virginia; that he is a member of the Middleburg Tennis Club, the Middleburg Forum, the Loudoun Golf & Country Club and the Middleburg Hunt, all in Virginia; that his primary health care provider is in Virginia; and, that he has filed federal and Virginia state tax forms since at least 2002. <u>See</u> Docket No. 17-1. Notwithstanding, Weinstein admits that he owns an apartment in Isla Verde, Puerto Rico, where he stays when he is in Puerto Rico attending to business matters one to two weeks per month. According to Plaintiff, despite being a principal owner of the law firm

Weinstein-Bacal & Miller, P.S.C., he mostly works from home in Virginia. Additionally, although the appearing defendants claim that he is a current member and director of the local Rotary Club, the Plaintiff maintains that he has not been the club's director since at least fifteen years ago and rarely attends meetings due to his schedule. Finally, the movants placed into question how the Plaintiff is able to attend to his law firm's clients in Puerto Rico and not be domiciled in Puerto Rico, to which the Plaintiff responds that when he is not in Puerto Rico, his partner, Peter W. Miller, administers the law firm's day to day operations. Id.

    Pursuant to the foregoing information, the Court finds that Mr. Weinstein has fulfilled his burden of showing that his current residence, his main personal and real property, his voting registration, his personal bank accounts, his club memberships, his driver's license and his payment of taxes are all in the state of Virginia. His apartment in Isla Verde, Puerto Rico and his remaining work ties in Puerto Rico are not inconsistent with his intention to reside in Virginia and remain there indefinitely. Therefore, this Court concludes that Plaintiff has successfully established diversity, and thus, the motion to dismiss for lack of subject matter jurisdiction is thus **DENIED**.

   **B. Failure to State a Claim**

    The movants also request that the claims be dismissed on the grounds that they are time-barred. According to the defendants, the alleged damages in this case arise out of a sale that took place in May of 2006 and, because the statute of limitations for damages is one year, defendants now argue the Plaintiff's claim is time barred. See Docket No. 12. In his response, Weinstein contends that the motion to dismiss should be denied to the extent it does not specify for which causes of action Plaintiff is supposedly barred from recovering damages, making the allegation in a vague manner, without making any reference to the specific remedies requested by the Plaintiff in the complaint. According to Plaintiff, the moving defendants ignored his request that the sale of the University Avenue Property be declared void *ab initio*; that the registration of the transfer of the University Avenue Property be canceled in the Property Registrar of the Commonwealth of Puerto Rico; that the co-defendants cease and desist from interfering with the use and enjoinment of Plaintiff in WPC and/or its University Avenue Property; and that defendant Wendt and his alter egos pay Plaintiff the sum of four hundred thousand dollars ($400,000.00) for the rent received by them as a result of their allegedly fraudulent conduct. The Plaintiff now argues that none of

CIV. NO. 10-1750 (PG)                                             Page 8

these remedies is time barred because the statutes the movants now cite in support of their request for dismissal is inapplicable. See Docket No. 17.

The main remedy requested in the complaint is that the sale of the University Avenue Property be declared null inasmuch as it was done with the purpose of defrauding Plaintiff and the property was sold to an alter ego of defendant Wendt. As noted by the Plaintiff in his opposition, an action requesting the nullity of the simulated sale of a property is never time-barred. Much like in De Jesus Diaz v. Carrero, 112 P.R. Dec. 631, 12 P.R. Offic. Trans. 786 (1982), this action should be "regarded as one seeking primarily to set aside or undo a transaction entered into fictitiously by the plaintiff's debtor and others with the fraudulent intent to prevent the plaintiff from recovering." Id. at 639 (official translation). According to the Supreme Court of Puerto Rico, an action for absolute nullity has no time limit because "[w]hen there is simulation, there is no rescission, but nullity." Id. at 643 (official translation). Accordingly, this particular remedy cannot be time-barred as alleged by the movants in their request for dismissal.

With regards to the action requesting damages and foregone rent, the Plaintiff contends that he continued to suffer damages for as long as the Wendts and La Julia continue to represent themselves as owners of the University Avenue Property and keep collecting rents and fruits from its possession. In addition, the Plaintiff sustains that he found out about the sale of the University Avenue Property in January 2009. Shortly thereafter, Plaintiff filed an intervention and complaint in a pending state court case on March 3, 2009, making the same allegations that have been made in the instant case, thereby tolling the statute of limitations for extra-contractual damages. Finally, he filed the instant claim within the year of the local court's denial of his request for intervention in said case. Assuming the applicable statute of limitations is one year from the day on which they could have been instituted pursuant to P.R. Laws Ann. tit. 31, §§ 5298-5299, the Plaintiff argues that he timely filed his complaint from the moment he found out about the situation that brings about the present claim. See Docket No. 17.

"The limitations period for actions brought pursuant to Article 1802 is one year. See P.R. Laws Ann. tit. 31, § 5298(2). That period ordinarily begins to run at the time that the aggrieved party knows (or should have known) of both his injury and the identity of the party who caused it." Gonzalez

<u>Figueroa v. J.C. Penney Puerto Rico, Inc.</u>, 568 F.3d 313, 318 (1st Cir.2009) (internal citations omitted). Here, the Plaintiff alleges that the nature of his damages has been continuous, some of which have taken place within the year of filing this complaint, and in addition, that he tolled the statute of limitations in state court as soon as he knew of the injury in question. Drawing all inferences in favor of the Plaintiff at this stage of the proceedings, the Court will thus **DENY** the movants' motion to dismiss on the grounds that the claim is time-barred.

### III. CONCLUSION

The evidence presented makes it clear to this Court that, despite maintaining some work contacts in Puerto Rico, Plaintiff's domicile is, and has been, in Middleburg, Virginia since he moved there indefinitely in 2001. For the foregoing reasons, the Court finds that it has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 to entertain Plaintiff's claims and, thus, **DENIES** the motion to dismiss for lack of diversity jurisdiction (Docket No. 12). In addition, making all reasonable inferences in Plaintiff's favor at this stage of the proceedings, the Court hereby **DENIES** the movants' motion to dismiss (Docket No. 12) the Plaintiff's claim for extra-contractual damages on the grounds that it is time-barred.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, March 30, 2011.

S/ JUAN M. PEREZ-GIMENEZ
JUAN M. PEREZ-GIMENEZ
U.S. DISTRICT JUDGE